**Opinion issued February 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00606-CV

————————————

## ABRAHAM MELAWER AND DONALD CAHILLY, Appellants

## V.

## TOTAL AIRCRAFT SERVICES, INC., Appellee

On Appeal from County Civil Court at Law No. 2
Harris County, Texas
Trial Court Case No. 930,447

## MEMORANDUM OPINION

The primary issue in this appeal is the validity of a $25,000 sanctions order.

We affirm.

## Background

In December 2008, Abraham Melawer sued appellee Total Aircraft Services, Inc. for a declaratory judgment to invalidate a $1,737.90 mechanics lien on Melawer's airplane for repairs Total claimed it performed in November 2003. Total answered in March 2009 and filed a counterclaim for breach of contract for $1737.90.

After a bench trial, Total sought $75,000 in sanctions against Melawer and his lawyer, appellant Donald Cahilly, to compensate Total for attorney's fees for what it claimed was a frivolous lawsuit and Melawer's perjury. Total argued that Melawer had created a false alibi at trial: the airplane had been chartered and was in Baton Rouge from November 5 to 10, 2003, and Total could not have worked on it during that time. At the sanctions hearing, Total's counsel argued to the trial court as follows:

> The reason they had to know that this lawsuit was frivolous was in the Bonometti trial, B-O-N-O-M-E-T-T-I, Mr. Melawer gave a deposition. The lawyer appearing on behalf of Mr. Melawer was Don Cahilly. The main issue or one of the main issues in that case was the use of the aircraft, "What were you doing with this aircraft?" And on page 6 of our motion, we go through all of the evidence that Mr. Melawer testifies to saying that he never used that aircraft to fly charter flights. He positively asserts that whenever he flew a charter aircraft, he always flew his customer's airplane, never this aircraft. Point after point after point, that is inconsistent with Mr. Melawer's alibi.
>
> Mr. Melawer, in the earlier version of this lawsuit in Randy Wilson's court, testified that he last worked on the plane in November. That was his testimony then. Mr. Herbert [counsel for

2

Total] impeached him on that point. So, when talking about what is a frivolous lawsuit, a frivolous lawsuit is one which the rules define as one having no basis in law or fact. The fact in this issue, in this lawsuit, that was in dispute was the fact of whether we did the repairs on November 6th, 2003. And the only way Mr. Melawer was able to survive summary judgment was by refusing to call the FAA to find out when we filed the lien until the day of trial when we were told that they were going to stipulate to that, and by manufacturing evidence to suggest that there was a fact issue as to when this aircraft was flown. And that evidence that was manufactured was the affidavit that was attached to a response in the summary judgment motions that were filed.

The trial court summarized its concerns to Cahilly at the hearing as follows:

So, that's where I'm at. I don't know if you [Cahilly] directly participated in it. But you represented Mr. Melawer in the other case. You knew that the testimony and that these attorneys were under the impression this was not a charter plane so why would they be asking for, in defense of this suit, charter information if you've already testified it was never used for charters. Well, guess what? The alibi said it was chartered. That's the kind of thing that makes people get a little nuts in law because there are certain things that should be absolutely. They should be black and white.

. . .

And so, given that, I don't know if you [Cahilly] were compliant in it or not. I don't know because I don't know your relationship with your client. And I'm not delving into that. I'm looking at, as a whole, if Mr. Melawer misrepresented to you that the work wasn't done and he knew it was done and he didn't put the sticker in the logbook, then that's Mr. Melawer's problem and he is abusing my court. And he is abusing the court systems of the United States and especially the State of Texas. And he is wasting time where other cases should be tried. And he just wanted to get out -- he just didn't want to pay him [Total] because he was mad at him. And he wanted to use the court system to punish him. And that's not what these are for. These are for genuine disputes. And I find that the work was done and he knew it was done.

MR. CAHILLY: I take your judgment. I accept the judgment, but -- and this is where I run into a conflict with my client is I don't

3

believe that I did anything improper in any way in this case. And, you know, if we need to have a trial on that issue, we can have a trial on that issue, but, you know, I guess I want to --

THE COURT: I don't want to have a trial on that issue. I think it is between you and your client if I award sanctions. And you can have your confidential conversation with your client about what needs to happen. And if it doesn't get resolved, then you can bring whatever you need to bring and properly allocated at a later date. Because I am not going to get into your attorney-client relationship at this point in time because I'm going to give you an opportunity to work that out with your client. Whether or not I award sanctions, though, I am -- like I said, I do think there was perjury committed in my Court. And I do think it was -- that part of it, I think was intentional, and that part warrants sanctions.

On January 31, 2011, the trial court signed three documents:

• **First**, a final judgment (a) awarding Total $1,737.90 from Melawer with prejudgment interest, (b) declaring that Total's lien was valid, (c) ordering Melawer to pay Total $35,000.00 in attorney's fees pursuant to Civil Practice and Remedies Code chapter 38, (d) awarding Total $25,000.00 in sanctions from Cahilly and Melawer, jointly and severally, and (e) postjudgment interest on all amounts.

• **Second**, a twelve-page sanctions order awarding Total $25,000.00 in sanctions from Cahilly and Melawer, jointly and severally for *each* of the following: (a) $25,000.00 as sanctions for violations of Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code chapter 10 for, inter alia, filing frivolous pleadings and perjured documents; (b) $25,000.00 as sanctions for violations of Texas Rule of Civil Procedure 215 for discovery

4

abuse by both Cahilly and Melawer; (c) and $25,000.00 as sanctions for violations of Texas Rule of Civil Procedure 166a(h) for making false affidavits and fabricating records. The sanctions order further found that sanctions were "justified based on the totality of the violations it finds were committed by Messrs. Cahilly and Melawer. These abuses were not isolated or accidental, but willful, deliberate and calculated, all in an attempt to perpetrate a fraud on this Court and to extract a benefit from [Total]: the release of its valid lien without paying for the repairs [Total] performed on the Aircraft." The trial court nonetheless ordered that Total "is entitled to recover one sanction in the total amount of $25,000.00, against Messrs. Cahilly and Melawer, jointly and severally."

  • **Third**, a nine-page findings of fact and conclusions of law.

Prior to the expiration of its plenary power, the trial court signed a revised final judgment on April 14, 2011, which recited the provisions of the January 31, 2011 judgment and added an award of appellate attorney's fees.

On May 20, 2011 Melawer filed a motion for new trial in which he argued: (1) any sanctions based on the original lawsuit—that the lien was invalid for failure to give the name and address of the owner of the aircraft—was not frivolous when made and consequently any sanctions based on the original allegation should be reconsidered; (2) Total's "counterclaim" for breach of contract was barred by

limitations and Civil Practice and Remedies Code section 16.069 does not apply to allow the "counterclaim" to be filed, thus the $1,737.90 breach-of-contract award and the $35,000.00 in attorney's fees should be set aside; and (3) sanctions should not be awarded "simply because [the trial court] finds one side's proof more persuasive than the other side's." On May 16, 2012, Cahilly filed a motion for new trial in which he argued that it was error to award sanctions because: (1) no sanctionable conduct took place; (2) the sanction was not directly related to the offensive conduct; (3) the sanctions awarded will not secure the parties' compliance with the rules, punish violators, and deter others; (4) the sanction awarded was excessive and more severe than necessary; (5) no nexus exists between the conduct, offender, and sanction; (6) the sanction is arbitrary, capricious, and without regard to guiding law; (7) the sanction penalizes filing a lawsuit and properly representing a client; (8) the sanction is not supported by the evidence; and (9) there was no abuse of the rules of discovery, filing of documents, or pleading. Neither Melawer nor Cahilly specifically challenged in the trial court the three independent $25,000.00 bases for the one unitary $25,000 sanction, and neither Melawer nor Cahilly objected below to the joint-and-several nature of the sanction. Both Melawer and Cahilly filed timely notices of appeal.

**Discussion**

<u>Melawer's appeal</u>

Melawer brings two issues: (1) the trial court erred in imposing a $25,000 sanction on him because a trial court cannot impose sanctions when the basic facts are in dispute and (2) Total's "counterclaim" is barred by limitations. In his first issue, Melawer does not specifically does not challenge the sufficiency of the trial court's findings of fact. Rather, he argues that the common law bars the imposition of sanctions based on disputed facts when the evidence allows a fact-finder more than one "permissible view." Melawer grounds this policy argument in appellate-opinion statements that "undisputed evidence" was presented in the trial court or that parties relied on allegations outside their personal knowledge. *See, e.g.*, *Low v. Henry*, 221 S.W.3d 609, 617 (Tex. 2007); *Keith v. Keith*, 221 S.W.3d 156, 167 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Melawer's policy argument contends that lawyers and their clients should not be subject to sanctions merely because the fact-finder finds against them. But he is also candid with this Court in arguing the basis for the sanction:

> It is true that the sanctions did not exclusively rest on Judge Smith's credibility determinations. She faulted Mr. Melawer for withholding the flight log and charter records that had been requested in discovery and for wrongfully arguing that such documents were irrelevant. And she justified sanctions in part because Mr. Melawer did not reveal its alibi defense in answers to interrogatories or requests

7

> for admissions even though the discovery requests clearly and properly called for disclosure of this information. Rather, Melawer revealed the alibi defense for the first time at trial.
>
> Undoubtedly, sanctions can be imposed on parties who do not comply with discovery obligations. To the extent Mr. Melawer did not do so, Judge Smith might have found some sanctions in order.

(Record citations omitted).

Without deciding the legal issue of whether sanctions can be imposed on disputed facts when the evidence allows a fact-finder more than one "permissible view," we note that the trial court made 24 findings and conclusions to support its $25,000 sanction under Texas Rule of Civil Procedure 215, which addresses discovery sanctions. But even if Melawer had challenged the sufficiency of all of those findings, there is nonetheless sufficient evidence—for example, Melawer's August 2008 and September 2009 affidavits asserting that Total performed no maintenance or repair on the airplane after October 23, 2003 versus Melawer's November 2007 deposition testimony in a related case that Total worked on the airplane in November 2003—from which the trial could have concluded that no legitimate fact question existed concerning whether Total did the repairs on November 6, 2003.

To be successful, an appellant must challenge every independent basis on which the trial court's judgment can be sustained. *See Cincinnati Life Ins. Co., v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (discussing summary judgment motion granted on multiple, independent grounds). Considering (1) the lengthy findings

8

made by the trial court in both the sanctions order and the formal findings of fact and conclusions of law and (2) the independent grounds for imposition of the $25,000 sanction, Melawer has not demonstrated reversible error based on the sanction. Accordingly, we overrule his first issue.

In his second issue, Melawer contends that Total's "counterclaim" is barred by limitations. We acknowledge there appears to be a split of authority on the issue of whether an underlying breach-of-contract claim is properly characterized as a counterclaim to an action to declare a lien invalid for the purpose of extending limitations under Civil Practice and Remedies Code section 16.069. *Compare Wright v. Matthews*, 26 S.W.3d 575, 577–78 (Tex. App.—Beaumont 2000, pet. denied) (holding limitations-barred breach-of-contract claim was not counterclaim to action to quiet title under section 16.069) *with Briargrove Park Prop. Owners, Inc. v. Riner*, 867 S.W.2d 58, 62–63 (Tex. App.—Texarkana 1993, pet. denied) (stating there was "no dispute" that limitations-barred breach-of-contract claim was not counterclaim to action to quiet title under section 16.069); TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (West 2008).

Melawer, however, did not obtain a ruling from the trial court on his limitations defense until his motion for new trial was denied. Nor does Melawer show on appeal where he introduced evidence on this affirmative defense that it was his burden to prove. Melawer argues that Total's claim "would be undeniably

9

barred by limitations if Total [] had been the plaintiff." Had proof of the affirmative defense been introduced and a ruling requested, that might have been correct, but here no such assertion of limitations was made. A postjudgment motion is not a timely objection to the lack of a necessary finding of fact on which evidence is required. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We therefore hold that Melawer waived this issue by proceeding to trial without a ruling on his limitations defense.

We overrule Melawer's second issue.

Cahilly's appeal

Cahilly argues that the trial court erred in imposing a $25,000 sanction under (1) Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code chapter 10, (2) Rule 215, and (3) Rule 166a(h). He does not specifically challenge the evidentiary sufficiency of the court's findings in either the sanctions order or findings of fact and conclusions of law. Rather, he argues generally that the trial court improperly applied the law regarding sanctions and that by not securing a pretrial hearing and ruling, Total waived its claim for sanctions. *See Remmington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993).

We first note that Total disputes it was possible to secure a pretrial hearing and ruling on sanctions, as the plane-was-in-Baton-Rouge "alibi" arose at trial. *See id.* (holding that posttrial sanctions for discovery abuse revealed for first time

at trial is not waived).  Regardless of whether Total could have raised sanctions before trial, Cahilly did not timely object to the post-trial sanctions proceedings and this allegation of error has not been preserved.  *See* TEX. R. APP. P. 33.1(a).

Moreover, Cahilly never challenges the joint-and-several liability for the $25,000 sanction award, either in this Court or below.  As such, we need not decide whether the trial court properly attributed improper actions of Melawer to Cahilly to justify its sanctions award, and hold that Cahilly is independently liable, jointly and severally, based on Melawer's conduct.  Cahilly's issues are moot, and we dismiss them.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

11